**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GRAND OLE OPRY IP, LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. _____** |
| **v.** | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **DAYDREAM COFFEE COMPANY LLC** | ) | |
| **d/b/a OPRY PROVISIONS and DANIEL G.** | ) | |
| **SCHOVAIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### COMPLAINT

---

Plaintiff Grand Ole Opry IP, LLC ("Opry IP" or "Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Daydream Coffee Company LLC d/b/a Opry Provisions and Daniel G. Schovain (collectively, "Defendants") and in support thereof, states as follows:

### NATURE OF THE ACTION

1.      This is an action for trademark infringement, false association and false designation of origin, unfair competition, and trademark dilution in violation of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.*, and related state causes of action under Illinois statutory and common law.

2.      The Grand Ole Opry®—or, as it is more commonly known, the Opry®—is one of the oldest and most legendary entertainment venues in the United States. Since its founding in

1925, the Opry® has been a showcase for country music's stars, superstars, and rising stars alike, and a celebration of the many styles, genres, backgrounds, and history of American music.

3.     At every Opry® show, musicians and songwriters provide live performances to a global audience through WSM Radio, Sirius XM, and Circle Country.  The Opry® is an American institution and country music's biggest stage.

4.     Opry IP recently discovered Defendants have commenced use of the famous Opry® trademark in connection with a new country music venue and event space.  Upon learning of Defendants' activities, Opry IP contacted Defendants to explain its prior trademark rights and request they cease their infringement.

5.     Defendants rejected Opry IP's attempts to address Defendants' infringement amicably.  Despite being on notice of Opry IP's prior rights, Defendants have expanded their use of the OPRY® marks and now bill themselves as both "The Opry" and the "Lil' Ole Opry."

6.     Defendants' ongoing and repeated acts of trademark infringement are a blatant attempt to trade off Opry IP's goodwill and reputation built up over the past century and constitute trademark infringement and dilution under federal and state law.  Unfortunately, Opry IP is left with no choice but to bring this action to prevent consumer confusion and protect its valuable trademark rights.

## THE PARTIES

7.     Opry IP is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business located at One Gaylord Drive, Nashville, Tennessee 37214.

8.     Defendant Daydream Coffee Company LLC d/b/a Opry Provisions ("Opry Provisions") is a limited liability company organized and existing under the laws of the State of

Illinois, having a principal place of business at 4354 Johnson Avenue, Western Springs, Illinois 60558. According to Illinois Secretary of State records, Opry Provisions's registered agent is Defendant Daniel G. Schovain.

9.      Upon information and belief, Defendant Daniel G. Schovain ("Schovain") is a resident of the State of Illinois.  Upon information and belief, Schovain is the founder and owner of Opry Provisions and personally owns, operates, and/or manages Opry Provisions and thus controls and manages the activities of Opry Provisions, including the infringing activities complained of herein.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as it involves a federal question; under 28 U.S.C. § 1332 as the action is between citizens of different States and the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000; and under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) in that this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

11.      This Court also has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

12.      This Court has supplemental jurisdiction over the claims that arise under Illinois state law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the Lanham Act.  Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

13.     Upon information and belief, this Court has general personal jurisdiction over Defendants because they are domiciled in and residents of the State of Illinois.  Upon information and belief, this Court has personal jurisdiction over Defendants because Defendants continuously and systematically conduct, transact, and solicit business in the State of Illinois and in this judicial District.  Upon information and belief, Defendants are also subject to personal jurisdiction in this Court as this action arises out of Defendants' contacts with this forum, as well as any and all other reasons consistent with the exercise of jurisdiction and which federal and state constitutional due process guarantees.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, among other things, (1) Defendants transact business in this judicial District, (2) Defendants are subject to personal jurisdiction in this judicial District, (3) a substantial part of the events giving rise to Opry IP's claims occurred in this judicial District, and (4) Opry IP is suffering harm in this judicial District.

## FACTUAL BACKGROUND

### A.     THE GRAND OLE OPRY® AND THE FAMOUS OPRY® MARKS

15.     For more than a century, the Opry® has been a legendary country music stage show, making it the longest-running radio broadcast in American history, as well as a premier live-music venue and entertainment enterprise offering live performances, food and beverage services, and related merchandise and programming.

16.     Originally founded in 1925 as a barn dance on WSM Radio, and officially named "the Grand Ole Opry" in 1927, Opry IP and its predecessors-in-interest and licensees have offered live and recorded musical performance and performance related content, entertainment services, and related goods and services in interstate commerce to music lovers worldwide.

4

17.     Since its founding, the Opry® has built a reputation for consistently presenting live country music performances while preserving the genre's traditions and values. Its long-standing history reflects the Opry's® central role in shaping country music's development for more than a century.

18.     Shows at the Opry® range from performances by nationally recognized artists to appearances by emerging artists at earlier stages of their careers.

19.     Over the years, tens of thousands of songs have been performed at the Opry®, with approximately 6,024 songs performed during Opry® shows each year.

20.     The Opry® broadcasts live every Friday and Saturday evening on WSM Radio (650 AM), reaching listeners worldwide, and is also simulcast on SiriusXM.  Weekly performances air on Circle Country (available on Roku, Samsung TV+, Vizio, and Xumo) on Saturday evenings. In addition, select special broadcasts air on NBC and Peacock, and live streams are available on the Opry® YouTube channel and Facebook page.

21.     The Opry® also offers a variety of tours designed to bring music lovers closer to the sights, sounds, and stories of the iconic Opry House and Ryman Auditorium.

22.     In honor of its 100th year, the Opry® launched the "Opry 100" celebration with weekly shows from music legends, newcomers, and surprise guests, all taking the stage to celebrate one hundred years of the show that made country music famous. Opry IP sells tickets for the "Opry 100" celebration at the domain <https://www.opry.com>.

23.     As part of the Opry 100 celebration, Opry IP invited music lovers to experience the Opry® like never before, with exclusive backstage tours, a televised Opry® live NBC special, the Grand Ole Opry: Live in London show at London's iconic Royal Albert Hall, the *Opry 100: Country's Greatest Songs* album of never-before-released performances, and much more.

24.     The Opry 100 celebration continues through 2026.  The Grand Ole Opry will return to Carnegie Hall on March 20, 2026, for "An Evening with the Grand Ole Opry," marking the Opry®'s fourth headlining performance at Carnegie Hall.

25.     Opry IP operates its principal website at <opry.com> (the "OPRY® Website") and uses the site to advertise Opry IP's and its licensees' various entertainment services and related goods and services, including live shows, Opry® tours, merchandise, Opry 100 events, and other special events, all under the prominent OPRY® mark, as depicted below:







A true and correct copy of select pages from Opry IP's website is attached hereto as collective

**Exhibit 1**.

26. Opry IP and its licensees offer the "Opry Shop" on the OPRY® Website, through

which consumers may purchase OPRY® branded apparel, hats, boots, music, jewelry, watches,

cufflinks, novelty pins, books, posters, tote bags, drinkware, home goods, souvenirs, and other

7

collectibles. A true and correct copy of exemplary screenshots from the Opry Shop website is attached hereto as collective **Exhibit 2** and excerpted below.





27. The Opry® also boasts a substantial social media presence, with approximately 3.1 million followers on Facebook (@grandoleopry); 1.2 million followers on Instagram (@opry); 713,600 followers on X (@opry); 507,000 followers on TikTok (@opryofficial); and 914,000 subscribers on YouTube (@Opry). True and correct copies of screenshots of Opry IP's social media pages are attached as **<u>Exhibit 3</u>** and excerpted below.









28.     A visit to the Opry® is ranked as the number one "Top Attraction in Nashville" on TripAdvisor and has received a 4.6-out-of-5-star rating based on more than 14,700 reviews.  It is also ranked number one in "Best Things to Do in Nashville" by *U.S. News*.

29.     Opry IP has formed collaborations with well-known brands such as Hallmark®, Imogene + Willie, Dingo 1969®, and Original Grain®.









30.     Among other intellectual property holdings, Opry IP owns all rights, title, and interest in and to the trademarks OPRY®, GRAND OLE OPRY®, OPRY MUSIC®, OPRY



NEXTSTAGE®, ®, ®, and ®, for use in connection with entertainment services in the nature of live musical performances, restaurant and bar services, and retail store services featuring general merchandise (collectively, the "OPRY® Marks").

31. Since at least as early as 1927, Opry IP and its predecessors-in-interest and licensees have used the OPRY® Marks continuously and extensively in interstate commerce to identify its goods and services and to distinguish such goods and services from those offered and provided by others. As a result, Opry IP has developed substantial goodwill and consumer recognition in the OPRY® Marks as trademarks identifying Opry IP and its goods and services.

32. Opry IP and its predecessors-in-interest and licensees have invested substantial time and resources advertising, developing, and promoting the OPRY® Marks, and in doing so, the OPRY® Marks have achieved commercial success and market recognition. The OPRY® Marks have become well-known not just in the United States, but across the world, and consumers recognize the marks as symbols for the Grand Ole Opry®.

33. As a result of Opry IP's and its predecessors-in-interest and licensees' extensive use, sales, advertising, and promotion of the OPRY® Marks in connection with Opry IP's goods and services over the past century, the OPRY® Marks have developed considerable recognition and reputational goodwill.

34.     Opry IP and its predecessors-in-interest and licensees have developed substantial goodwill, value, and recognition in the OPRY® Marks. Accordingly, the OPRY® Marks are crucial to the continued vitality and growth of its business.

35.     As a result of its extensive use and enforcement of the OPRY® Marks for many years, Opry IP and its predecessors-in-interest have established extensive common law trademark rights in the OPRY® Marks.

36.     In addition to its common law rights, Opry IP owns numerous federal trademark registrations for the OPRY® Marks, including, among others:

| Trademark | Registration Number | Goods / Services | Registration Date |
|---|---|---|---|
| **OPRY** | 7652132 | IC 041: entertainment services in the nature of live musical performances | Jan. 14, 2025 |
| | 6043010 | IC 041: entertainment services, namely, a multimedia program series featuring country music artists, musical performances, and related event information distributed via various platforms across multiple forms of transmission media | Apr. 28, 2020 |
| | 4077044 | IC 043: restaurant and bar services | Dec. 27, 2011 |
| | 3858951 | IC 035: retail store services featuring general merchandise, gifts, souvenirs, clothing, clothing accessories, foods, house wares, books, CDs, and DVDs | Oct. 12, 2010 |
| | 2948198 | IC 015: musical instruments and music boxes | May 10, 2005 |
| | 5118214 | IC 021: insulating sleeve holders for beverage cans | Jan. 10, 2017 |

| | 5118213 | IC 021: beverage glassware | Jan. 10, 2017 |
|---|---|---|---|
| | 5104845 | IC 018: tote bags | Dec. 20, 2016 |
| | 2843317 | IC 028: stuffed toy animals, balloons, bath toys, beach balls, music box toys, collectable toy figures, costume masks, dolls and accessories therefor, play figures, flying discs, musical toys, plush toys, puppets, rubber action balls, sand toys, toy stamps, wind-up toys, yo-yos, amusement park rides, board games, card games, coin-operated video games, pinball-type games, jigsaw puzzles, manipulative games and puzzles, promotional game materials, golf ball markers, golf bag tags, golf balls, golf gloves, fishing tackle boxes, sporting balls, and Christmas tree ornaments and decorations except confectionery or illumination articles | May 18, 2004 |
| | 5118215 | IC 039: provision of travel information; organization of travel; travel information services; providing a website featuring information on travel; providing links to web sites of others featuring travel; coordinating travel arrangements for individuals or groups | Jan. 10, 2017 |
| | 2843318 | IC 014: jewelry | May 18, 2004 |
| | 5104781 | IC 041: conducting guided tours of a historical site; providing information on the field of music, history, and culture via self-guided tours of buildings and sites. | Dec. 20, 2016 |

| | 5104844 | IC 009: Mouse pads; Pre-recorded CDs featuring music. | Dec. 20, 2016 |
|---|---|---|---|
| | 2813274 | IC 025: clothing, namely, jackets, coats, shirts, T-shirts, shorts, pants, socks, headwear, footwear, and infantwear, underwear. | Feb. 10, 2004 |
| | 2845121 | IC 016: Paper goods and printed matter, namely, address books, photograph albums, scrapbook albums, anniversary books, art pads, autograph books, paper bags, ball-point pens, binders, clip boards, book covers, bookmarks, children's activity books, printed music books, travel books, paper gift wrap, business cards, paper cake decorations, calendars, Christmas cards, occasion cards, note cards, trading cards, greeting cards, pencil cases, playing card cases, check books, checkbook covers, modeling clay, collages, coloring books, cook books, desk top organizers, diaries, hotel directories, easels, erasers, felt pens, fountain pens, guest books, guide books in the fields of travel, entertainment, and hospitality, hymn books, illustrations, arts and craft kits, legal pads, letter openers, log books, maps, marking pens, memo pads, sheet music, newsletters in the fields of travel, entertainment, and hospitality, painting sets, paper boxes, pencils, picture books, plastic bags, picture postcards, partially printed postcards, recipe books, scratch pads, pencil sharpeners, song books, stickers, table cloths of paper, temporary tattoos, printed tickets, iron-on transfers, wall calendars, writing | May 25, 2004 |

| | | | |
|---|---|---|---|
| | | tablets, and magazines in the fields of travel, entertainment, and hospitality. | |
| **GRAND OLE OPRY** | 4579644 | IC 041: entertainment services, namely, providing non-downloadable musical performances, musical videos, related film clips, photographs, and other multimedia materials, and news and information on shows, entertainment, musical artists and groups, all via website, mobile phone application and through online social media web sites | Aug. 05, 2014 |
| | 86141815 | IC 009: audio and video recordings featuring musical, dramatic, comedy and variety entertainment; digital media, namely, downloadable audio and video recordings featuring musical, dramatic, comedy and variety entertainment | Aug. 05, 2014 |
| | 3150063 | IC 009: pre-recorded audio tapes, video tapes, CDs, DVDs, CD-ROMs featuring music, dramatic, comedy, and variety performances; CD players; radios; cameras; refrigerator magnets | Sep. 26, 2006 |
| | 645898 | IC: 041: title of entertainment services in the nature of dramatic, dramatico-musical programs and/or musical programs performed through the medium of television and personal appearances | May 21, 1957 |
| | 527589 | IC 038: radio program broadcasting services; for entertainment services through the medium of radio and personal appearance performances of | Jul. 11, 1950 |

18

| | | dramatic, musical, and dramatico-musical programs; and for the advertising of sponsors' goods through the medium of radio broadcast programs | |
|---|---|---|---|
| | 2937990 | IC 015: musical instruments, music boxes, drumsticks, guitar picks | Apr. 05, 2005 |
| | 3012994 | IC 020: picture frames, jewelry boxes and cases not of metal, non-metal and non-leather keychains, non-metal key rings, hand-held flat fans, hand-held folding fans, figurines made of resin, plastic, and wood, plastic novelty license plates, ornaments made of resin, plastic, and wood, stuffed animals | Nov. 08, 2005 |
| | 2997211 | IC 028: stuffed toy animals, balloons, bath toys, beach balls, music box toys, collectable toy figures, costume masks, dolls and accessories therefor; Christmas tree ornaments, namely, bells; play figures, flying discs, musical toys, plush toys, puppets, rubber action balls, sand toys, toy stamps, wind-up toys, yo-yos, amusement park rides, board games, card games, coin-operated video games, pinball-type games, jigsaw puzzles, manipulative games and puzzles, promotional game materials, golf ball markers, golf bag tags, golf balls, golf gloves, fishing tackle boxes, sporting balls, and Christmas tree ornaments and decorations | Sep. 20, 2005 |
| | 2997210 | IC 025: clothing, namely, jackets, coats, shirts, T-shirts, sweatshirts, cardigans, rompers, shorts, pants, | Sep. 20, 2005 |

| | | socks, headwear, footwear, infant wear, underwear, visors | |
|---|---|---|---|
| | 2997213 | IC 016: paper goods and printed matter, namely, address books, photograph albums, scrapbook albums, anniversary books, art pads, autograph books, paper bags, ballpoint pens, binders, clip boards, book covers, bookmarks, children's activity books, printed music books, travel books, paper gift wrap, business cards, paper cake decorations, calendars, Christmas cards, occasion cards, note cards, trading cards, greeting cards, pencil cases, check books, books about country music, blank writing journals, document and stationery-type portfolios, stationery, checkbook covers, modeling clay, collages, coloring books, cook books, desk top organizers, diaries, hotel directories, easels, erasers, pens, pencils, felt pens, fountain pens, guest books, guide books in the fields of travel, entertainment, and hospitality, hymn books, illustrations, arts and crafts kits, legal pads, letter openers, log books, maps, marking pens, memo pads, sheet music, newsletters in the fields of travel, entertainment, and hospitality, painting sets, paper boxes, pencils, picture books, plastic bags, picture postcards, partially printed postcards, recipe books, scratch pads, pencil sharpeners, song books, stickers, bibs, table cloths of paper, temporary tattoos, printed tickets, iron-on transfers, wall calendars, coasters made of paper, writing tablets, and | Sep. 20, 2005 |

| | | magazines in the field of travel, entertainment, and hospitality | |
|---|---|---|---|
| **OPRY MUSIC** | 3088270 | IC 041: music publishing services | May 02, 2006 |
| | 3099321 | IC 009: pre-recorded CDs, DVDs, CD-ROMs, audio and video tapes all featuring music, dramatic, comedy, and variety performances | May 30, 2006 |
| **OPRY NEXTSTAGE** | 5802084 | IC 035: producing promotional audio visual recordings for others; promotional services, namely, promoting the goods and services of artists, music labels and musical bands and the music of others by providing websites and social media channels featuring artist portfolios consisting of previews of music to showcase their talent; advertising services, namely, promoting the sound and visual recordings and entertainment services of others via print and electronic media; providing online information, news and commentary in the field of business relating to the entertainment industry | Jul. 09, 2019 |
| | 5802085 | IC 041: providing non-downloadable playback of music and music videos via global communications networks; entertainment services, namely, providing information about performing artists in the nature of event information, performing schedules and tour dates | Jul. 09, 2019 |
|  | 5124368 | IC 041: entertainment services, namely, dramatic programs, dramatico-musical programs and musical programs performed through personal appearances | Jan. 17, 2017 |

21

| | 7188399 | IC 041: entertainment services in the nature of live visual and audio performances by musicians; entertainment, namely, live music concerts; presentation of live show performances; entertainment services in the nature of live visual and audio performances, namely, musical, variety, and comedy shows | Oct. 10, 2023 |
|---|---|---|---|
| | 1839640 | IC 038: radio program broadcasting services; television broadcasting services<br><br>IC 041: entertainment services; namely, dramatic programs, dramatico-musical programs and musical programs performed through the media of radio, television and personal appearances; and distribution of cable television programming to cablecasters | Jun. 14, 1994 |

37.     True and correct copies of the above registrations (collectively, the "OPRY®
Registrations") are attached hereto as collective **Exhibit 4**.  Each of the OPRY® Registrations is
valid, subsisting, and in full force and effect.

38.     In addition, U.S. Registration Nos. 6043010, 4077044, 3858951, 2948198,
5118214, 5118213, 4579644, 86141815, 3150063, 645898, 527589, 2937990, 3088270, 3099321,
5802084, 2843317, 5118215, 2843318, 5104844, 2843318, 2813274, 2845121, 3012994,
2997211, 2997210, 2997213, 5802085, and 1839640 have become incontestable, and thus serve
as conclusive evidence of the validity of the registered marks and of the registration of the marks,
of Opry IP's ownership of the registered marks, and of Opry IP's exclusive right to use the
registered marks in commerce.

22

39.     Through continuous, long-term use in commerce, Opry IP and its predecessors-in-interest and licensees have also established common law rights in the OPRY® Marks, and the use of the OPRY® Marks as a trade name or part of a trade name. Through their continuous, long-term use for nearly one hundred years, the OPRY® Marks have become so intertwined with Opry IP and its goods and services that it is understood by consumers to refer to the name and identity of Opry IP.

40.     Opry IP and its predecessors-in-interest and licensees have continuously used the OPRY® Marks in the U.S. and across the world as an identifier of the Opry® and as the source and origin of the Opry's legendary entertainment services, as well as related services such as food and drink, retail, and music publishing.

41.     Opry IP and its predecessors-in-interest and licensees have expended considerable time, resources, and effort in promoting the OPRY® Marks and developing substantial goodwill associated therewith throughout the U.S. and across the world.

42.     The OPRY® Marks are inherently distinctive when used in conjunction with Opry IP's goods and services.

43.     Due to the continuous and longstanding use of the OPRY® Marks by Opry IP and its predecessors-in-interest and licensees, the OPRY® Marks have long been an indicator of Opry IP as the single source of high-quality goods and services.

44.     As a result of Opry IP and its predecessors-in-interest and licensees' long and exclusive use of the OPRY® Marks, and the significant volume of sales, advertising, and promotion of the OPRY® Marks for the past century, the OPRY® Marks have achieved widespread and favorable recognition. Thus, the marks constitute valuable assets and symbols of Opry IP, its quality goods and services, and its goodwill.

45.     Through extensive use by Opry IP, its predecessors-in-interest, and its licensees, the OPRY® Marks have become well known and famous.

**B.     DEFENDANTS' WANTON, KNOWING, AND INTENTIONAL UNLAWFUL ACTS OF INFRINGEMENT**

46.     Without Opry IP's knowledge or consent, and beginning long after Opry IP first established extensive and valuable goodwill in the OPRY® Marks, Defendants commenced using, and are currently using, in interstate commerce and commerce affecting interstate commerce, the marks "OPRY," "OPRY PROVISIONS," and "LIL' OLE OPRY" (collectively, the "Infringing Marks") in connection with the sale, offering for sale, advertising, and promotion of entertainment services, live musical performances, venue and event rental services, coffee roastery goods and services, cocktail bar services, and retail services.

47.     Upon information and belief, Defendants selected the Infringing Marks solely because of the fame and reputation built up in the Opry® Marks by Opry IP over the past century and at great expense, and Defendants' sole intention in selecting the mark was to trade on the goodwill of Opry IP and the OPRY® Marks.

48.     Defendants had constructive knowledge and, upon information and belief, actual knowledge of the Opry®—and the OPRY® Marks—at the time of Opry Provisions's formation in 2018.

49.     Upon information and belief, Defendants chose to name their music venue and bar after the Opry® because of  Defendants' knowledge of the Opry® and the OPRY® Marks.

50.     Upon information and belief, Defendants own and operate the website (the "Infringing Website") located at the domain <www.opryprovisions.com> (the "Infringing Domain").  A true and correct copy of exemplary screenshots from the Infringing Website are attached hereto as collective **Exhibit 5**.

24

51.     Upon information and belief, Defendants also own and operate several social media accounts using the Infringing Marks, including, without limitation, the Facebook account using the handle @opryprovisions (accessible at www.facebook.com/opryprovisions) and the Instagram account using the handle @the_opry (accessible at www.instagram.com/the_opry) (collectively the "Infringing Social Media Accounts").  A true and correct copy of exemplary screenshots of the Infringing Social Media Accounts is attached hereto as collective **Exhibit 6**.

52.     According to the Infringing Website, Opry Provisions is "a laid back country-driven listening room."

53.     Upon information and belief, Defendants intentionally named and designed Opry Provisions to evoke the Opry® and create a false association with Opry IP and its predecessors-in-interest and licensees, the Opry®, and the OPRY® Marks.

54.     For example, prior to opening Opry Provisions, Defendants published an Instagram post on or around September 18, 2023, featuring a business inspection form listing their business name as "Opry" and captioned: "One down, three to go!  A taste of Nashville is on its way to Western Springs!"  A true and correct copy of Defendants' Instagram post is attached hereto as **Exhibit 7**.



55. Defendants also appear to display artwork created by legendary Nashville letterpress print shop, Hatch Show Print, in Opry Provisions's venue.



Posts from Defendants' Instagram account, @the_opry, with poster outlined in red

26



Poster listing on Hatch Show Print shop's website, shop.hatchshowprint.com



Post from Defendants' Instagram account, @the_opry, with poster outlined in red



Poster listing on Hatch Show Print shop's website, shop.hatchshowprint.com

56.     The Hatch Show Print Shop and Opry IP and its predecessors-in-interest and licensees have had a well-known and historic partnership for more than 80 years.  From 1924 to 1993, the Hatch Show Print shop was located directly behind Ryman Auditorium, the former home of the Opry® and one of Opry IP's other iconic venues and brands.

57.     Since the 1940s, Hatch Show Print has made posters for the Opry®, and, in the mid-1990s, started a new tradition as Hatch Show Print created a poster for almost every show at the Ryman Auditorium.  This tradition continues today and has further secured the two brands' historic link.

58.     The Opry® and the Hatch Show Print shop individually, as well as their well-known partnership, are part of the fabric of Nashville and the music industry as a whole.

59.     As a result of the well-known and longstanding partnership between the Opry® and Hatch Show Print, Defendants' use of Hatch Show Print artwork in its venue increases the likelihood of confusion with the Opry® and Opry IP and is further evidence of willfulness.

60. Defendants also feature a beverage on their cocktail menu titled the "Opry House Margarita." The Opry House is the current home of the Opry®.

61. Opry IP has not granted authorization to Defendants to use the OPRY® Marks to advertise, promote, offer to sell, or sell OPRY®-branded services through the Infringing Website or through any other channel.

62. Defendants appear to operate and transact business through the interactive Infringing Website, through which Defendants accept and process online purchases from any person in any city in the United States, including residents of this District. *See* Exhibit 5.

63. Upon information and belief, the Infringing Website was designed to form contacts with potential customers, including residents of this District, through which Defendants invite potential customers to submit their email address information to "sign up for our newsletter" and "[s]tay up to date with all news, including concert tickets, events & special releases!"

64. Upon information and belief, the Infringing Website was designed to form contacts with potential customers, inviting them to create an account to purchase show tickets and select products from Defendants via the Infringing Website.




65.     According to the Infringing Website, Defendants claim that "[t]he Lil' Ole Opry has offered locals and travelers alike an unparalleled venue experience[.]"

66.     Defendants routinely refer to Opry Provisions as "The Opry" or "The Lil' Ole Opry" on the Infringing Website and Infringing Social Media Accounts.

67.     The Infringing Website and Infringing Social Media Accounts prominently display the Infringing Marks in connection with Defendants' goods and services, as depicted below:

30







68.     According to Defendants' Infringing Social Media Accounts, Defendants also offer for sale and sell merchandise, including hats and coffee mugs, using the Infringing Marks, depicted below:





69.     Defendants' Infringing Marks have not been licensed, authorized, sponsored, endorsed, or approved by Opry IP, and Defendants are not associated, affiliated, or connected with Opry IP, or licensed, authorized, sponsored, endorsed, or approved by Opry IP in any way.

70.     Upon information and belief, Defendants' use of the Infringing Marks has been undertaken to trade on Opry IP's reputation and goodwill.

71.     Defendants' unauthorized uses include prominent and repeated use of the identical designation "The Opry" on the homepage of the Infringing Website, the Infringing Social Media Accounts, on merchandise, and at their physical venue; operation and promotion under the business name "OPRY PROVISIONS"; adoption and use of the social media handles @the_opry and @opryprovisions; and more recent branding as "THE LIL' OLE OPRY" on Defendants' Infringing Website and promotional materials. Defendants have also used website content expressly invoking the Opry® as the inspiration for their name and programming.

34

72. Defendants' services directly overlap with Opry IP's core offerings and channels of trade, including live music entertainment and bar/concession services.

73. Opry IP has not granted authorization to Defendants to use the Infringing Marks to advertise, promote, offer to sell, or sell OPRY-branded goods or services through its brick-and-mortar locations, the Infringing Website, or through any other channel.

74. Defendants' use of the Infringing Marks is without Opry IP's permission or authority and is likely to cause or has caused confusion, mistake, and deception among consumers and customers.

75. Through their use of the Infringing Marks, including, but not limited to, on the Infringing Website, Infringing Social Media Accounts, Infringing Domain, and brick-and-mortar location, Defendants seek to unfairly trade off the valuable goodwill and reputation built by Opry IP in its OPRY® Marks.

76. Defendants' use of the Infringing Marks in interstate commerce to advertise, promote, and sell its goods and services, including through the Infringing Website, Infringing Social Media Accounts, Infringing Domain, and brick-and-mortar locations, were never approved, permitted or endorsed by Opry IP, and occurred after Opry IP had established extensive and valuable goodwill in connection with its goods and services identified by the OPRY® Marks.

77. Defendants' use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without Opry IP's consent and began long

after Opry IP had established extensive and valuable goodwill in connection with its goods and services identified by the OPRY® Marks.

78. Opry IP and its predecessors-in-interest and licensees' first use in commerce of the OPRY® Marks predates Defendants' first use of the Infringing Marks such that Opry IP has priority over Defendants' use of the Infringing Marks.

## C. DEFENDANTS' CONTINUED AND WILLFUL INFRINGEMENT DESPITE ACTUAL KNOWLEDGE OF OPRY IP'S RIGHTS IN THE OPRY® MARKS

79. On August 21, 2025, Opry IP sent Defendants a letter requesting that they cease and desist from any and all use of the OPRY® Marks in connection with their business, including on their website and on any other websites or social media accounts under Defendants' control. A true and correct copy of this letter is attached hereto as **Exhibit 8**.

80. To date, Defendants have failed to comply with Opry IP's requests. Instead, Defendants informed Opry IP's counsel that, not only would Defendants continue using the Infringing Marks, but that Defendants would not comply with an injunction if entered by the Court.

81. Following Defendants' receipt of Opry IP's letter, Defendants escalated their infringing conduct by adopting and featuring the "THE LIL' OLE OPRY" mark on their Infringing Website and increasing their use of "The Opry" across their marketing channels and venue operations.

82. Defendants' use of the Infringing Marks was and is without Opry IP's license, authorization, sponsorship, endorsement, or approval, and Defendants are not associated or affiliated with Opry IP in any way. Defendants' conduct is willful, as evidenced by their continued and expanded use after receiving Opry IP's cease-and-desist correspondence.

83. Defendants' use of the Infringing Marks in connection with the Opry Provisions bar and music venue has already caused and will continue to cause actual confusion with Opry IP's

OPRY® Marks. For example, a Facebook user mistakenly tagged Opry Provisions when posting about her visit to the Grand Ole Opry®.

84.     Defendants' use of the Infringing Marks in connection with Defendants' business, online presence and services, and registration, maintenance, and use of the Infringing Website, Infringing Social Media Accounts, and Infringing Domain, has been made notwithstanding and with both actual and constructive notice of Opry IP's well-known and prior established rights in the OPRY® Marks.

85.     Defendants' continued use of the Infringing Marks constitutes malicious, willful, fraudulent and deliberate infringement.

86.     According to the "About Us" page of the Infringing Website, excerpted below, and upon information and belief, Schovain is the sole operator of Opry Provisions.



87.     Upon information and belief, Schovain is the founder and owner of Opry Provisions, and thus controls and manages the infringing activities of Opry Provisions.

88. Upon information and belief, Schovain, in his role as founder and owner of Opry Provisions, was and is actively and personally involved in the wrongful acts giving rise to this action.

89. According to the "About Us" page of the Infringing Website, and upon information and belief, Schovain is the moving, active, conscious force behind Opry Provisions' infringement of the OPRY® Marks and the registration of the Infringing Domain, and, specifically, the decision to begin using the Infringing Marks.

90. Upon information and belief, Schovain personally took part in, ratified, and/or directed others to engage in the infringing and/or wrongful activity related to Opry Provisions. As a result, Schovain is personally liable for the wrongful acts he has committed as alleged herein.

91. Upon information and belief, as founder and owner of Opry Provisions, Schovain has a direct financial interest in Opry Provisions, and the right and ability to supervise Opry Provisions' activities, including the wrongful acts alleged herein.

92. Upon information and belief, as founder and owner of Opry Provisions, Schovain has an apparent or actual partnership with Opry Provisions and has authority to bind Opry Provisions in transactions with third parties or exercise joint ownership of control over the services and products sold under the Infringing Marks.

93. Upon information and belief, Schovain knowingly, personally, and actively participated in, authorized, ordered, controlled, approved, or ratified the infringement of the OPRY® Marks by and through Opry Provisions, and intentionally induced others (including but not limited to Opry Provisions) to infringe the OPRY® Marks.

94. Upon information and belief, Schovain explicitly or implicitly encouraged Opry Provisions's infringement of the OPRY® Marks.

95.     Upon information and belief, in addition to his personal participation in the wrongful acts alleged herein, Schovain is secondarily, vicariously, and/or contributorily liable for the infringing acts of Opry Provisions.

## D.     HARM TO OPRY

96.     Defendants' acts are likely to cause, and have caused, confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Opry IP and its predecessors-in-interest and licensees, and as to the origin, sponsorship, or approval of Defendants' goods, services, and commercial activities.  Defendants' conduct also threatens to weaken, blur, or tarnish the distinctiveness of the famous OPRY® Marks by eroding the singular association between OPRY® and the Grand Ole Opry® in the minds of consumers or by causing Opry IP's trademarks and the goodwill associated therewith to be confused or mistakenly associated with services of lesser quality.

97.     Defendants' use of the Infringing Marks is without Opry IP's permission or authority and is likely to cause confusion, mistake, and deception among consumers and customers.

98.     Defendants' use of the Infringing Marks is the same as the identity previously used by Opry IP.

99.     Defendants' use of the Infringing Marks would be recognized as Opry IP's previously used identity because it points uniquely and unmistakably to Opry IP.

100.     The fame or reputation of Opry IP and the OPRY® Marks is such that, when the Infringing Marks are used in connection with Defendants' services, a connection with Opry IP would be presumed.

101.    Opry IP is not connected with the Infringing Marks, Defendants, or services or activities performed by Defendants under the Infringing Marks.

102.    In selecting and continuing to use marks that include the term "Opry" in connection with the sale and offering of their services, notwithstanding their actual knowledge of Opry IP's rights, Defendants have acted and continue to act with wanton disregard for Opry IP's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill which Opry IP has established in the OPRY® Marks.

103.    Defendants' actions have caused and continue to cause Defendants' services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with Opry IP.

104.    The Infringing Marks utilized by Defendants are confusingly similar to Opry IP's OPRY® Marks.

105.    Defendants' activities are likely to cause confusion, to cause mistake, and to deceive consumers and others as to the source, nature, and quality of the goods and services offered by Defendants.

106.    Defendants' wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the origin, sponsorship, or approval of the goods and services offered by Defendants with or by Opry IP.

107.    Defendants continue to offer for sale and sell their purported services under the Infringing Marks.

108.    Defendants' refusal to cease use of the Infringing Marks with actual knowledge of Opry IP's rights in  the OPRY® Marks and after receiving Opry IP's cease-and-desist letter—and Defendants' decision to expand their use of the Infringing Marks, including but not limited to

adopting the nickname "The Lil' Ole Opry"—exacerbate the risk of consumer confusion and irreparable harm to Opry IP's reputation and goodwill.

109.    Opry IP has been damaged by Defendants' activities complained of herein, and unless such activities are preliminarily and permanently enjoined, Opry IP and its goodwill will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages.

**CAUSES OF ACTION**

**COUNT I**

**FEDERAL TRADEMARK INFRINGEMENT
IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114**

**(*against all Defendants*)**

110.    Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

111.    Opry IP is the owner of valid, federally registered OPRY® Marks, as described above.

112.    Opry IP's rights in the federally registered OPRY® Marks predate Defendants' first use of the Infringing Marks.

113.    Defendants' acts constitute federal trademark infringement in violation of the Federal Trademark Act of 1946, specifically 15 U.S.C. § 1114(1).

114.    Defendants have used in commerce a reproduction, copy, or colorable imitation of the registered OPRY® Marks in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

115.    Defendants' Infringing Marks are spurious marks that are identical with, or substantially indistinguishable from, Opry IP's registered OPRY® Marks.

41

116.    Defendants' acts of trademark infringement have caused Opry IP damages, and Opry IP seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of the Infringing Marks, for the damages sustained by Opry IP, for statutory damages (at Opry IP's election), for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

117.    Opry IP seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or Opry IP's damages, whichever is greater, due to the nature of Defendants' willful conduct.

118.    Pursuant to 15 U.S.C. § 1116 and equity, Opry IP is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

119.    Pursuant to 15 U.S.C. § 1118 and equity, Opry IP is entitled to impoundment and destruction of infringing articles.

## COUNT II

**FEDERAL UNFAIR COMPETITION, FALSE ASSOCIATION AND FALSE
DESIGNATION OF ORIGIN IN VIOLATION OF
THE LANHAM ACT, 15 U.S.C. § 1125(a)**

***(against all Defendants)***

120.    Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

121.    Opry IP is the owner of valid, federally registered and common law OPRY® Marks, as described above.

122.    Defendants have caused goods and services to enter interstate commerce with the Infringing Marks and designations connected therewith.

123. Defendants' use of the Infringing Mark is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Opry IP and its predecessors-in-interest and licensees, and as to the origin, sponsorship, or approval of Defendants' goods and services by Opry IP and its predecessors-in-interest and licensees. Additionally, the public is likely to believe that Defendants' goods and services are provided, sponsored, approved, or licensed by—or are affiliated or legitimately connected with— Opry IP, all to Opry IP's irreparable harm and in violation of 15 U.S.C. § 1125(a).

124. Defendants' use of said designations and other representations constitute a false association and false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Opry IP and as to the origin, sponsorship, or approval of such goods and services by Opry IP.

125. Defendants have used the Infringing Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with Opry IP.

126. Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with Opry IP, and with the intent to deceive and defraud the public.

127. Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with their goods and services a false association, a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Opry IP and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities.

128.     Defendants' acts of unfair competition and passing off, false association, and false designation of origin have caused Opry IP damages, including, without limitation, lost profits and costs to remediate the confusion and harm to Opry IP's goodwill and reputation caused by Defendants.

129.     Defendants' acts of unfair competition and passing off, false association, and false designation of origin have caused Opry IP damages, and Opry IP seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of Opry IP's goods and services, for the damages sustained by Opry IP, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and reasonable attorneys' fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

130.     Opry IP further seeks judgment for three times the amount of Defendants' profits or Opry IP's damages, whichever is greater, due to the nature of Defendants' willful conduct.

131.     Pursuant to 15 U.S.C. § 1116 and equity, Opry IP is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

132.     Pursuant to 15 U.S.C. § 1118 and equity, Opry IP is entitled to impoundment and destruction of infringing articles.

## COUNT III

### TRADEMARK DILUTION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(c)

#### (*against all Defendants*)

133.     Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

134.     Opry IP is the owner of valid, federally registered and common law OPRY® Marks, as described above.

135.     The OPRY® Marks are distinctive and famous marks within the meaning of 15 U.S.C. § 1125(c) by virtue of their inherent and acquired distinctiveness; the long duration and wide extent of the use of the marks; the long duration, wide extent, and wide geographic reach of advertising and publicity of the marks; the large volume and wide geographic extent of sales of goods and services offered under the marks; the high degree of actual recognition of the marks; and the longstanding federal registrations of the marks.

136.     Defendants have used the Infringing Marks, or variants thereof similar to or likely to cause confusion with the OPRY® Marks, in commerce for Defendants' commercial gain.

137.     Defendants commenced use of the Infringing Marks after the OPRY® Marks became distinctive and famous.

138.     The Infringing Marks used by Defendants as illustrated above are spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to the OPRY® Marks.

139.     Defendants use the Infringing Marks in commerce. Such use is commercial in nature.

140.     Even if the Court finds Defendants' use of the Infringing Marks is not likely to cause confusion with the OPRY® Marks, Defendants have engaged in dilution by blurring and/or by tarnishment because Defendants' use of the Infringing Marks has already caused or is likely to cause an association arising from the similarity between Defendants' Infringing Marks and the genuine OPRY® Marks that impairs the actual or acquired distinctiveness of the OPRY® Marks, or harms the reputation and goodwill associated with Opry IP's OPRY® Marks.

141.     Defendants' use of the Infringing Marks has caused, or is likely to cause, dilution of the OPRY® Marks.  It is likely that the ordinary consuming public of the U.S. will make an

association arising from the similarity of the marks that impairs the distinctiveness of the famous OPRY® Marks.

142.    Defendants' use of the Infringing Marks constitutes dilution under 15 U.S.C. § 1125(c), and Opry IP is entitled to an injunction prohibiting such further use.

143.    Defendants' acts have caused Opry IP damages.  On information and belief, Defendants willfully intended to trade on the recognition of Opry IP's famous marks, entitling Opry to seek judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants through their unlawful acts, for the damages sustained by Opry IP, and for all costs necessary to remediate the unlawful acts and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117.

144.    On information and belief, Defendants willfully intended to trade on the recognition of Opry IP's famous marks, and/or harm the reputation of Opry IP's famous marks, entitling Opry IP to treble its damages and Defendants' profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

145.    Defendants' willful conduct renders this case exceptional, entitling Opry IP to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy Defendants' actions pursuant to 15 U.S.C. § 1117.

146.    Pursuant to 15 U.S.C. § 1118, Opry IP is entitled to impoundment and destruction of infringing articles.

## COUNT IV

## ILLINOIS COMMON LAW TRADEMARK INFRINGEMENT

### (*against all Defendants*)

147.    Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

46

148.    Opry IP is the owner of valid, federally registered and common law OPRY® Marks, as described above.

149.    Opry IP first adopted and used the OPRY® Marks as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

150.    The OPRY® Marks are valid and protectable marks by virtue of their association with such goods and services and Opry IP's federal registrations.

151.    Defendants' use of the OPRY® Marks is without the consent of Opry IP.

152.    Opry IP's trade is in danger of harm from the use of its OPRY® Marks by Defendants as it is likely to deceive the public into the belief that Defendants' affairs, in the respect complained of, are those of Opry IP.

153.    Defendants' use of the OPRY® Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Infringing Marks with Opry IP, and as to the origin, sponsorship or approval of Defendants' goods by Opry IP. Additionally, the public is likely to believe that the goods and services of Opry Provisions are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected with Opry IP, all to Opry IP's irreparable harm and in violation of Illinois common law.

154.    Defendants' use of the Infringing Marks, and/or variants thereof similar to the OPRY® Marks, is likely to cause confusion concerning the origin of the goods and services associated with the OPRY® Marks.

155. As alleged herein, Defendants have engaged in unfair, deceptive, or fraudulent conduct, which is likely to cause, if it has not already, consumer confusion in violation of Illinois common law.

156. Through Defendants' use of the Infringing Marks, and/or variants thereof similar to or likely to cause confusion with the OPRY® Marks, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

157. Defendants' acts of infringement have caused Opry IP damages, and therefore Opry IP is entitled to all available remedies, including preliminary and permanent injunctive relief, damages, Defendants' profits, enhanced damages, and costs.

## COUNT V

**TRADEMARK AND TRADE NAME DILUTION**
**IN VIOLATION OF THE ILLINOIS TRADEMARK REGISTRATION AND**
**PROTECTION ACT, 765 ILCS 1036/65 *et seq.* AND ILLINOIS COMMON LAW**

**(*against all Defendants*)**

158. Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

159. Opry IP is the owner of valid, federally registered and common law OPRY® Marks, as described above.

160. The OPRY® Marks are distinctive and famous marks in the State of Illinois within the meaning of 765 ILCS 1036/65(a) by virtue of the high degree of inherent and acquired distinctiveness of the OPRY® Marks in this State; the long duration and wide extent of use of the OPRY® Marks in connection with the goods and services with which the OPRY® Marks are used; the long duration and wide extent of advertising and publicity of the OPRY® Marks in this State; the wide geographic extent of the trading area in which the OPRY® Marks are used; the high

degree of recognition of the OPRY® Marks in this State in Opry IP's and Defendants' channels of trade; and the longstanding federal registrations of the OPRY® Marks.

161.    Opry IP and its predecessors-in-interest and licensees have used the OPRY® Marks extensively in U.S. commerce, including in this State, for nearly 100 years.

162.    Defendants' use of Opry IP's OPRY® Marks and OPRY® trade name, or variants thereof similar to or likely to cause confusion with the OPRY® Marks and OPRY® trade name, has been used in commerce for Defendants' commercial gain.

163.    Even if the Court finds Defendants' use of the Infringing Marks is not likely to cause confusion with Opry IP's OPRY® Marks and OPRY® trade name, Defendants have engaged in dilution by blurring because Defendants' use of the OPRY® Marks and OPRY® trade name, or variants thereof similar to or likely to cause confusion with the OPRY® Marks and OPRY® trade name, has already caused or is likely to cause an association arising from the similarity between Defendants' Infringing Marks and Opry IP's OPRY® Marks and OPRY® trade name that impairs the actual or acquired distinctiveness of Opry IP's OPRY® Marks and OPRY® trade name.

164.    Defendants have engaged in dilution by tarnishment because Defendants' use of the OPRY® Marks and OPRY® trade name, or variants thereof similar to or likely to cause confusion with the OPRY® Marks and OPRY® trade name, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and Opry IP's OPRY® Marks and OPRY® trade name that harms the reputation and goodwill associated with Opry IP's OPRY® Marks and OPRY® trade name.

165.    Defendants only recently adopted "OPRY", well after the OPRY® Marks and OPRY® trade name became famous.

166.    The Infringing Marks being used by Defendants as illustrated herein is identical to the OPRY® Mark and OPRY® trade name.

167.    Defendants use the Infringing Marks in commerce.  Such use is commercial in nature.

168.    Defendants' use of the Infringing Mark in connection with their goods and services has caused, or is likely to cause, dilution of Opry IP's OPRY® Marks and OPRY® trade name.  It is likely that the ordinary consuming public in Illinois will make an association arising from the similarity of the marks that impairs the distinctiveness of the OPRY® Marks and OPRY® trade name.

169.    Defendants willfully intended to trade on the recognition of Opry IP's famous OPRY® Marks and OPRY® trade name.

170.    Defendants' acts have caused Opry IP damages, and Opry IP is entitled to injunctive relief and all other available statutory remedies under 765 ILCS 1036/65(a) due to the nature of Defendants' conduct, including, without limitation: Defendants' profits made by Defendants through their unlawful acts; damages sustained by Opry IP; for all costs necessary to remediate the unlawful acts and their effects; and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

171.    Opry IP further seeks judgment for three times the amount of Defendants' profits or Opry IP's damages, whichever is greater, due to the nature of Defendants' conduct pursuant to 765 ILCS 1036/65(a).

172.    Pursuant to 765 ILCS 1036/65(a) and equity, Opry IP is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

173.    Pursuant to 765 ILCS 1036/65(a) and equity, Opry IP is entitled to impoundment and destruction of infringing articles.

## COUNT VI

### UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILL. COMP. STAT. ANN. 505/1 *et seq.*

#### (*against all Defendants*)

174.    Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

175.    As alleged herein, Defendants have engaged in unfair competition and deceptive trade practices, which are likely to cause, if they have not already, consumer confusion in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.

176.    As alleged herein, Defendants' violations of the Lanham Act and Illinois state and common law, including Defendants' acts of trademark infringement, unfair competition, false association and false designation of origin, and dilution, constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of 815 ILCS 505/1 *et seq.*, entitling Opry IP to all remedies available, including injunctive relief, actual damages, and reasonable attorneys' fees and costs.

177.    Defendants' actions are likely to cause consumers to believe that Defendants' goods and services originate from the same source as, or are sponsored or approved by Opry IP, or that there is an association, affiliation, or connection between Defendants and Opry IP.

178.    Through Defendants' unauthorized use of the Infringing Marks in connection with Defendants' goods and services in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

179.    Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Opry IP, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by Opry IP.

180.    Defendants are liable to Opry IP for unfair competition and deceptive trade practices under Illinois law, because Defendants are palming off their goods and services bearing the Infringing Marks as genuine Opry IP goods and services.

181.    Upon information and belief, Defendants willfully intended to trade on the recognition of Opry IP's famous OPRY® Marks, and therefore intended for consumers and the market generally to rely on Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein.

182.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein occurred during a course of conduct involving trade or commerce.

183.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein has been used in commerce for Defendants' commercial gain.

184.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein are directed to the market generally or otherwise implicate consumer protection concerns.

185.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein occur primarily and substantially in Illinois.

186.    Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of Illinois law.  Defendants' acts of unfair competition, along with their deceptive trade

practices, have caused Opry IP damages, and Opry IP seeks judgment for Defendants' profits made by said unfair competition and deceptive acts, for the damages sustained by Opry IP, for all costs necessary to remediate the unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

187.     By these actions, Defendants have engaged and continue to engage in unfair or deceptive acts and practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* As a result, Opry IP has suffered, and will continue to suffer, damage to its business, reputation, and goodwill.

188.     Opry IP has suffered actual damages as a direct and proximate result of Defendants' wrongful, deceptive and unfair trade practices.

189.     Defendants' deceptive and unfair trade practices are causing and will continue to cause Opry IP to suffer irreparable harm, for which Opry IP has no adequate remedy at law.

190.     Opry IP is entitled to injunctive relief and all other available statutory remedies, including, but not limited to, Opry IP's damages; Defendants' profits; and attorney fees and costs pursuant to 815 ILCS 505/10a.

191.     Further, Opry IP is entitled to injunctive relief against Defendants to stop the illegal conduct.

## COUNT VII

### UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILL. COMP. STAT. ANN. 510/1 *et seq.*

#### (*against all Defendants*)

192.     Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

193.     As alleged herein, Defendants have engaged in unfair competition and deceptive trade practices, which are likely to cause, if they have not already, consumer confusion in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

194.     As alleged herein, Defendants' violations of the Lanham Act and Illinois state and common law, including Defendants' acts of trademark infringement, unfair competition, false association and false designation of origin, and dilution, constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of 815 ILCS 510/1 and 510/2(a) *et seq.*, entitling Opry IP to all remedies available, including injunctive relief, actual damages, and reasonable attorneys' fees and costs.

195.     Defendants' actions are likely to cause consumers to believe that Defendants' goods and services originate from the same source as, or are sponsored or approved by Opry IP, or that there is an association, affiliation, or connection between Defendants and Opry IP.

196.     Through Defendants' unauthorized use of the Infringing Marks in connection with Defendants' goods and services in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

197.     Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Opry IP, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by Opry IP.

198.    Defendants are liable to Opry IP for unfair competition and deceptive trade practices under Illinois law, because Defendants are palming off their goods and services bearing the Infringing Marks as genuine Opry IP goods and services.

199.    Upon information and belief, Defendants willfully intended to trade on the recognition of Opry IP's famous OPRY® Marks, and therefore intended for consumers and the market generally to rely on Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein.

200.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein occurred during a course of conduct involving trade or commerce.

201.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein has been used in commerce for Defendants' commercial gain.

202.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein are directed to the market generally or otherwise implicate consumer protection concerns.

203.    Defendants' use of the Infringing Marks and the deceptive or unfair practices alleged herein occur primarily and substantially in Illinois.

204.    By these actions, Defendants have engaged and continue to engage in unfair or deceptive acts and practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*  As a result, Opry IP has suffered, and will continue to suffer, damage to its business, reputation, and goodwill.

205.    Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of Illinois law.  Defendants' acts of unfair competition, along with their deceptive trade practices, have caused Opry IP damages.

206.    Opry IP is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct, pursuant to 815 ILCS 510/3.

207.    Pursuant to 815 ILCS 510/3, Opry IP further seeks costs and attorneys' fees due to the willful nature of Defendants' conduct.

### COUNT VIII

### ILLINOIS COMMON LAW UNFAIR COMPETITION

### (*against all Defendants*)

208.    Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

209.    Opry IP is the owner of valid, federally registered and common law OPRY® Marks, as described above.

210.    Defendants have commenced the use of an identical or confusingly similar mark to indicate or identify identical and overlapping goods and services.

211.    As alleged herein, Defendants have engaged in deceptive or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Illinois common law.

212.    As alleged herein, Defendants' violations of the Lanham Act and Illinois state and common law, including Defendants' acts of trademark infringement, unfair competition, false association and false designation of origin, and dilution, constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation Illinois common law entitling Opry IP to all remedies available under Illinois law for such unfair competition.

56

213.   Defendants' actions are likely to cause consumers to believe that Defendants' goods and services originate from the same source as, or are sponsored or approved by Opry IP, or that there is an association, affiliation, or connection between Defendants and Opry IP.

214.   Through Defendants' unauthorized use of the Infringing Marks in connection with Defendants' goods and services in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

215.   Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Opry IP, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by Opry IP.

216.   Defendants are liable to Opry IP for unfair competition under Illinois law, because Defendants' conduct is tortious and has deprived Illinois of customers and other prospects.

217.   Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of Illinois law. Defendants' acts of unfair competition have caused Opry IP damages, and Opry IP seeks judgment for Defendants' profits made by Defendants' unfair competition, for the damages sustained by Opry IP, for all costs necessary to remediate the unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

218.   Opry IP further seeks judgment for punitive damages due to the willful nature of Defendants' conduct.

219.    Further, Opry IP is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT IX

### UNJUST ENRICHMENT

### (*against all Defendants*)

220.    Opry IP repeats and realleges paragraphs 1 through 109 as if fully set forth herein.

221.    Defendants have gained financial benefit by using the Infringing Marks to promote their business.

222.    Upon information and belief, Defendants' willful and knowing acts, including their use of the Infringing Marks, permitted Defendants to procure customers that it otherwise would not have been able to obtain.

223.    Opry IP has conferred a benefit, directly or indirectly, upon Defendants through Defendants' use of the infringing versions of the OPRY® Marks.

224.    Defendants have received appreciable benefits from using the infringing versions of the OPRY® Marks in commerce.

225.    Opry IP has not received any compensation in exchange for the benefits received by Defendants.

226.    It is inequitable for Defendants to retain the benefits of the use of the infringing versions of the OPRY® Marks, including, but not limited to, monetary and reputational benefits and value of the OPRY® Marks.

227.    Defendants have been unjustly enriched by virtue of their use of the infringing versions of the OPRY® Marks to the detriment of Opry IP, as well as consumers in the marketplace.

228.     Upon information and belief, Defendants knowingly accepted and retained the benefits from using the infringing versions of the OPRY® Marks in commerce.

229.     Upon information and belief, Defendants' acts are willful, wanton, calculated to deceive, and undertaken in bad faith.

230.     Upon information and belief, Defendants will continue to make substantial profits and/or gains to which they are not entitled in law or equity if not enjoined from using the Infringing Marks to promote and sell their goods and services.

231.     Upon information and belief, Defendants intend to continue their unlawful acts unless restrained by this Court.

232.     Equity requires the Defendants to compensate Opry IP for the profits it has received in connection with the use of the Infringing Marks.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Opry IP respectfully prays for the following relief:

A.     That the Court enter a judgment in favor of Opry IP and against Defendants as to all causes of action alleged herein;

B.     An order requiring that Defendants and any subsidiaries, officers, agents, servants, employees, owners, and representatives, and all other persons or entities in active concert or participation with Defendants, be preliminarily enjoined, permanently enjoined, and restrained from:

      a.  making any use of any of the Infringing Marks or OPRY® Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, in connection with the sale of any goods or offering of any services;

      b.  manufacturing, distributing, advertising, marketing, promoting, organizing, booking, hosting, offering for sale, or selling any goods, services, events, or programming including, without limitation, live music entertainment services; venue, bar, coffee, and concessions services; ticketing and admissions;

sponsorships and promotions; and entertainment-related merchandise, with the Infringing Marks, the Opry® Marks, or other marks or trade dress that look confusingly similar to any of the OPRY® Marks, as well as any other forms of markings, signage, menus, tickets, stage backdrops, set designs, posters, flyers, electronic or printed programs, press releases, marketing materials, packaging, labels, wrappers, containers, receptacles, catalogs, price lists, promotional materials, advertisements, paid keywords, hashtags, websites, social media pages, profiles, usernames/handles, email addresses, or domain names bearing the Infringing Marks, the Opry® Marks, or a reproduction, counterfeit, copy, or colorable imitation of any of the OPRY® Marks;

c.  using any mark, trade dress, design, statement, or representation that may be calculated to falsely represent or that has the effect of falsely representing that the services or products of the Defendants are in any way sponsored by, originate with, or are associated or approved by Opry IP;

d.  falsely representing themselves or their goods or services as affiliated with, connected with, associated with, or approved by Opry IP;

e.  doing any other act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, including prospective customers of the Opry®, as to the source of the goods offered, distributed, marketed, advertised, or sold by Defendants, or as to whether there is a connection between Opry IP and Defendants;

f.  secreting, moving, concealing, destroying, selling off, transferring, or otherwise disposing of any records or other evidence relating to the promoting, organizing, booking, hosting, offering for sale, or selling of any goods and services using the Infringing Marks;

g.  otherwise unfairly competing with Opry IP in any way;

h.  forming or causing to be formed any corporation or other entity that engages in the activities referred to in subparagraphs (a) through (g) and

i.  assisting, aiding, or abetting any other person or entity in engaging in any of the acts set forth in (a) through (h) above, including, but not limited to, passing on information to others to allow them to do so;

C.  That Defendants be ordered to deliver up for destruction all markings, signage, menus, tickets, stage backdrops, set designs, posters, flyers, electronic or printed programs, press releases, marketing materials, packaging, labels, wrappers, containers, receptacles, catalogs, price

lists, promotional materials, advertisements, websites, social media pages, profiles, usernames/handles, email addresses, domain names, and any other items in Defendants' possession or control that bear the Infringing Marks, the OPRY® Marks, or any other mark, word, designation, name, or domain name that is confusingly similar to the OPRY® Marks;

D.       That Defendants be ordered to file with the Court and serve on Opry IP, within 30 days after the entry of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

E.       That Defendants be required to pay and account to Opry IP for any and all benefits or profits derived by Defendants from the use of the Infringing Marks, the OPRY® Marks, and any other name or mark incorporating any mark, word, designation, name, or domain name that is confusingly similar to the OPRY® Marks, including the sale of any and all products or services associated with any such name or mark, and for all damages sustained by Opry IP by reason of said acts of unfair competition, false association, false designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125, and Illinois statutory and common law;

F.       That Opry IP be awarded statutory damages under 15 U.S.C. § 1117(c) and 15 U.S.C. § 1117(d), should Opry IP so elect;

G.       That Opry IP be awarded punitive and/or treble damages in an amount no less than three times the amount of Defendants' profits or Opry IP's damages, whichever is greater, increased subject to the principles of equity, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of their actions;

H.       Disgorgement of all profits or other unjust enrichment obtained by Defendants as a result of Defendants' conduct complained of herein, with the amount of such profits increased to

the extent they are inadequate to compensate Opry IP for the harm incurred as a result of Defendants' acts;

       I.      An accounting of all financial records of Defendants;

       J.      That the costs of this action be awarded to Opry IP;

       K.      That Opry IP be awarded its reasonable attorney fees due to the exceptional nature of this case and Defendants' intentional, wanton and willful illegal conduct;

       L.      That Defendants be liable for any award of monetary damages, treble damages, punitive damages, costs, and/or attorney fees;

       M.      That pre-judgment and post-judgment interest be awarded to Opry IP; and

       N.      That this Court grant such other and further relief as it shall deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Opry IP hereby requests a trial by jury of any issues so triable.

Dated: February 23, 2026.                    Respectfully submitted,

                                             **ADAMS & REESE, LLP**

                                             /s/ Cole J. Braun
                                             Cole J. Braun (ARDC 6295961)
                                             Maia T. Woodhouse (TN BPR No.  030438)
                                             (*motion for pro hac vice admission
                                             forthcoming*)
                                             Claire N. Heflin (TN BPR No. 042463)
                                             (*motion for pro hac vice admission
                                             forthcoming*)
                                             1600 West End Avenue, Suite 1400
                                             Nashville, Tennessee 37203
                                             Tel: (615) 259-1450
                                             Fax: (615) 259-1470
                                             Email: cole.braun@arlaw.com
                                                      maia.woodhouse@arlaw.com
                                                      claire.heflin@arlaw.com

                                             *Attorneys for Plaintiff Grand Ole Opry IP,
                                             LLC*